# Phelps v. Commonwealth.

(Decided Oct. 9, 1934.)

J. B. JOHNSON and R. C. BROWNING for appellant.

BAILEY P. WOOTTON, Attorney General, and H. HAMILTON RICE, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

Eugene McFarland, Ted Phelps, and Gus Phelps were indicted by the grand jury of Whitley county, charged with the crime of grand larceny committed by taking, stealing, and carrying away an Oakland automobile of greater value than $20, the personal property of Edward Lay, without his knowledge and consent, with the fraudulent intent to convert it to their own use and to deprive permanently the owner thereof. McFarland, on a plea of guilty, was found guilty by the jury and his punishment fixed at confinement in the state reformatory for a period of one year. Ted and Gus Phelps were jointly tried before a jury resulting in the acquittal of Gus and the conviction of Ted. His punishment was fixed at confinement in the state reformatory for a period of one year. He is here insisting instruction No. 1 is erroneous; an instruction on petty larceny should have been given, and the evidence is insufficient to sustain a conviction.

Instruction No. 1 reads:

"If you believe from the evidence in this case beyond a reasonable doubt that the defendants, Ted Phelps and Gus Phelps, * * * without the consent and against the will of the owner thereof, took, stole and carried away from the possession of Edward Lay, an Oakland automobile of greater value than $20.00, and parts of same, the personal property of Edward Lay, * * * you will find the defendants or either of them about whom you so believe guilty of grand larceny, as charged in the indictment. * * *"

The instruction is criticized because the word "and" is used thus: "Ted Phelps and Gus Phelps," and because the words "and parts of same" are used in the connection in which they are used in the instruction.

It is argued:

"The copulative conjunction should have been 'or'

not 'and.' Taylor v. Com., 172 Ky. 136, 188 S. W. 1087. Of course, the appellant could not have been convicted for an offense which his brother did. However, this instruction authorizes it.''

The reading of the instruction as a whole shows the fallacy of this argument. The fact the jury acquitted Gus and convicted Ted plainly shows the jury did not interpret the instruction as Ted now presents in his criticism of it. Notwithstanding the use of the conjunction "and" to which the objection is now directed, the jury correctly read and followed the instruction authorizing it to find' Ted and Gus, or either of them, not guilty. Even though the use of the word "and," instead of the word "or," should be regarded a technical error, since the jury correctly read the instruction and acquitted the one and convicted the other, it is thus demonstrated that it, as it is written, was not prejudicial.

The inclusion of the words "part of same" in the instruction immediately following the phrase "took, stole and carried away from the possession of Edward Lay an Oakland automobile of a greater value than $20.00," by the conjunction "and," does not convey the impression that Ted and Gus were being tried for stealing parts of the automobile. Before it was authorized to find Ted guilty, the jury was required by the instruction to believe from the evidence beyond a reasonable doubt that both the "Oakland automobile and parts of same" were of greater value than $20, and were taken, stolen, and carried away from the possession of Lay, as defined in the instruction. The jury was not authorized by it to find either of them guilty if it merely believed from the evidence beyond a reasonable doubt that "parts of same," "the personal property of Edward Lay," were taken as set forth in the instruction. Whilst the use of the words "and parts of same" were entirely unnecessary, yet their presence in the instruction was not prejudicial to the substantial rights of the accused. Indeed, the instruction, emphasizes the thought the jury was not authorized to find him guilty unless it believed from the evidence, beyond a reasonable doubt, he was guilty of stealing both "the automobile and the parts of same."

The insistence the verdict of the jury is not sustained by the evidence requires a review of it. Edward

Lay resided at Corbin and owned an Oakland automobile of the value of $75 or $100. When it was stolen, it was on Gordon street, below the home of Lay. It was taken and carried away in the nighttime without his knowledge and consent. Ted Phelps and Eugene McFarland were in Corbin on that Saturday night. In Lay's automobile they left Corbin on that night, about 10 o'clock, to go, and did go in it, to Bald Rock in Laurel county about sixteen miles from Corbin where Gus Phelps, at that time, resided.

McFarland admitted he stole Lay's automobile and asserted he was alone at the time. He further testified that he and Ted went in it to Bald Rock to see Gus Phelps so he could purchase of the latter a pistol, which he wanted. Ted Phelps claimed that he made the trip because "he (McFarland) wanted him to go down to the home of his brother (Gus)." They arrived at the home of Gus in the nighttime; slept in the car until daylight. The next day there was a baptizing in the community. Ted was asked: "You went at night to get ready for it?" Hs answer was: "Yes, sir." The Phelpses and McFarland agree in their testimony that the three of them left Bald Rock Sunday night between 9 and 10 o'clock in Lay's automobile and arrived at "Craig's Creek Hill in Laurel County" about 1 or 2 o'clock in the daytime, when the automobile got out of condition; gas was obtained at Silas Prewitt's and on Craig's Creek Hill, while going down hill, it ran into a stump; again they started it and, after going about half way up the hill, it would not run and they left it, where Lay regained the possession of it, at which time it was stripped of its detachable parts, including the "windshield wiper."

McFarland claimed, after he stole it, he went to the home in Corbin of Anna Phelps, a sister of Gus and Ted, where he and Ted, with the automobile, commenced their journey to Bald Rock. Anna Phelps testified that about 10 o'clock in the night some person, unknown to her, called at her home for Ted. Maxine Walters testified that she was at the home of Anna Phelps in October when some one came in an automobile to the home of Anna Phelps, sounded a car horn, and inquired if Ted Phelps was there, when she informed him he was. She did not know whether it was during the night the Lay automobile was stolen, but she knew it was McFarland

who came in an automobile and called for Ted Phelps.

On the way from Bald Rock, Silas Prewitt exchanged with them gasoline "for two horns and a spare tire." Ted and Gus Phelps and McFarland ate dinner at the home of Blane Bolton. The automobile was in their possession at that time.

Lay was unable to regain possession of the parts of the car except the "windshield wiper." It was returned to him by Skee Nelson of Laurel county. Maynard Ridner purchased the "windshield wiper," that was attached to the automobile at the time it was stolen, of Lloyd Cobb, a resident of Corbin, who had previously purchased it at Corbin from Ted Phelps, who was carrying it in his pocket at the time and place he sold it to Cobb. Lay identified the "windshield wiper" by means of a certan tube that had been cut by him with a screwdriver while cleaning it. The rubber tube and "windshield wiper" were presented and used as evidence at the time of the trial. Ted's explanation of his possession of the tube and "windsheld wiper" was, he bought them of "Boyd Flemmings," and later sold them to Cobb. He admitted the tube and "windshield wiper," produced at the trial, were the ones he sold to Cobb.

It is not denied that Ted Phelps and McFarland were in Corbin on the night the automobile was stolen. They admitted they made the trip in it from Corbin to Bald Rock. In their testimony they do not exactly agree as to the purpose of making this trip. It is undisputed that the "windshield wiper" was correctly, definitely, and positively identified by Lay as the one attached to, and in use on, the automobile at the time it was taken from his possession. Nor is it disputed that it was on the automobile during the whole of the time the latter was in the possession of Ted Phelps and McFarland. The automobile was stripped of its parts, including the "windshield wiper," at the place it was abandoned by the Phelpses and McFarland, and immediately thereafter the "windshield wiper" was in the possession of Ted Phelps and sold by him to Cobb. These facts imposed the duty on Ted Phelps to explain to the satisfaction of the jury that he was innocently in the possession of the automobile and the "windshield wiper." It was with the jury to accept his and McFarland's explanation of his connection with the use of the car and possession of the "windshield wiper."

True it is, he claimed he acquired possession of the "windshield wiper" by buying it from Boyd Flemmings; but he failed to produce Flemmings to corroborate him and thus establish his innocent connection with the "windshield wiper" and the automobile. The possession of stolen property or parts thereof, not explained satisfactorily, is alone sufficient to authorize the submission of a case to the jury and to sustain a conviction of the crime of larceny. Davidson v. Com., 219 Ky. 251, 292 S. W. 754; Baker v. Com., 215 Ky. 772, 286 S. W. 1057; Davis v. Com., 191 Ky. 242, 229 S. W. 1029. Although Ted was convicted on a separate trial, the evidence showing that the automobile and its parts were taken at the same time was clearly competent. It was competent to show in whose possession the automobile or any of its different parts was found. The value of the car and its parts was shown to be in excess of $20. The evidence that the value of the automobile at the time it was taken exceeded $20 is neither controverted nor denied. Hence, there was no necessity for an instruction on petty larceny. Davis v. Com., supra.

The showing that the automobile and the "windshield wiper" were in the possesson of the accused and McFarland shifted to him the burden of showing his innocence of the theft of the automobile. Rogers v. Com., 188 Ky. 817, 224 S. W. 348.

The declaration of Ted Phelps that he had obtained the "windshield wiper" from Boyd Flemmings made it incumbent upon him to produce Flemmings as a witness in his behalf. It is a familiar rule that, if a witness to an important fact in favor of a party, whom he can easily and readily produce, but does not do so, the failure to do so raises the presumption that the reason he failed to introduce the witness is, he will not testify to facts favorable to him.

With the evidence uncontradicted that Ted was in possession, in connection with McFarland, of the automobile and exclusively in the possession of the detached "windshield wiper," his failure to introduce Flemmings to corroborate his explanation as to how he came into possession of the "windshield wiper" is a convicting circumstance tending strongly to establish his guilt. Star Mills v. Bailey, 140 Ky. 194, 130 S. W. 1077, 140 Am. St. Rep. 370; Rice v. Rice, 243 Ky. 837, 50 S. W. (2d) 26; Rogers v. Com., supra.

It is undoubtful the evidence was sufficient to authorize the submission of the case to the jury and to sustain its verdict. Chapman v. Com., 234 Ky. 681, 28 S. W. (2d) 977; Miller v. Com., 234 Ky. 224, 27 S. W. (2d) 957; Cole v. Com., 243 Ky. 265, 47 S. W. (2d) 1065.

Wherefore, the judgment is affirmed.