554 A.2d 395

**Walter E. ROBINSON**

v.

**STATE of Maryland.**

**No. 155, Sept. Term 1986.**

Court of Appeals of Maryland.

March 9, 1989.

310

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Norman L. Smith, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY COUCH *, McAULIFFE and ADKINS, JJ.

McAULIFFE, Judge.

The defendant in a criminal trial did not produce a witness whose identity was known only to him, and who, according to the defendant, could give testimony that would tend to exonerate him. The trial judge instructed the jury that they could find that because the defendant failed to produce the witness, the witness's testimony would have

---

* COUCH, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

been unfavorable to the defendant. The defendant contends the "missing witness" instruction should not have been given because it was more likely than not that the witness, even if called, would not have testified because of a legitimate fear of self-incrimination. Although we agree that in some circumstances the likelihood that a witness could and would refuse to testify on grounds of self-incrimination will so undermine the basis of the missing witness rule that the instruction should not be given, we do not find this to be such a case.

## I.

The facts in this case are uncomplicated. At about 3:45 a.m. on March 26, 1985, Officers Richard Peil and Scott Harrold of the Baltimore City Police Department observed a 1985 brown Toyota fail to completely stop for a stop sign. They followed the Toyota without activating their emergency equipment or attempting to stop it. After about eight blocks, the Toyota stopped and passengers began to alight from it. The police officers ordered everyone to remain in the vehicle. Officer Peil, who approached from the passenger's side, said the courtesy lights continued to illuminate the interior of the vehicle because the doors were left ajar. He testified that he observed the ignition had been "popped"—that is, the ignition lock had been removed from its normal position on the right, or passenger's, side of the steering column. Officer Peil observed the ignition lock[1] lying in plain view on the front passenger's floorboard, and he observed a hole approximately two inches in diameter in the steering column where the ignition lock would ordinarily be mounted. The officers promptly initiated an inquiry by

---

1. The ignition lock is the metal cylinder into which the ignition key is inserted. With the proper key in place, the mechanism in the interior of the cylinder can be turned. When the ignition lock is mounted in the steering column, the portion of the lock which can be turned when the key is inserted interlocks with an electrical switch that activates the starter and other electrical circuits. Removal of the ignition lock allows the ignition switch to be activated by a screwdriver, penknife, or similar implement.

radio, and determined that the Toyota had been stolen in Baltimore County approximately 48 hours earlier.[2] The defendant, who was driving the Toyota, was arrested.

The defendant testified that he had borrowed the car from a friend a short time before he was arrested. He said that he was walking in the area of 725 George Street in Baltimore City shortly after 3:00 a.m. on March 26 when he came upon his friend, Alvin, who was sitting in the driver's seat of the Toyota. The defendant said he had known Alvin for some time, and had seen him driving the Toyota the previous day. According to the defendant, Alvin said the car belonged to his cousin. The defendant further testified that Alvin gave him permission to take the car to a convenience store "to buy some junk food." He said he was returning from the convenience store and had stopped to discharge two passengers from the rear seat when the police confronted him. He denied knowing that the car was stolen, explaining that: when he first entered the car from the driver's side the engine was running, and he had no occasion to shut it off; upon arrival at the convenience store he kept the motor running so that his passenger could enjoy the radio; he had never seen the ignition lock on the floor and did not know it had been "popped"; and, the interior lights were never on while he was in the Toyota. He said that when he stopped to let the passengers out, he observed Alvin standing about 10 to 15 steps away. He described what occurred after the police told him the car was stolen, as follows:

> **Defendant:** I [said] this car isn't stolen. It's a friend of mine, my man Alvin right there.
>
> **Defense Attorney:** And then what—what, if anything, did Alvin do at that time?
>
> **Defendant:** That's when Alvin was walking away, when I was going toward him. He must have knew it was stolen, after I seen him walking.

---

**2.** This fact was proven at trial through the testimony of the owner of the Toyota.

Defense Attorney: Did you tell the police officer to go after Alvin?

Defendant: I told them that was his car, and they didn't pay no mind.

On cross-examination, the defendant refused to give Alvin's last name. However, he recanted when the trial judge signed an order finding him in contempt, and provided the name of Alvin Johnson. The defendant explained his initial reluctance to provide full identification by stating that he lived in an environment where one might be shot for identifying a friend as a criminal perpetrator.

The defendant was convicted, and appealed to the Court of Special Appeals. That court affirmed the conviction in an unreported opinion, holding that the missing witness instruction should not be given when it is probable that the witness would properly claim a privilege against self-incrimination if called. However, the court found that the instruction was proper in this case because Alvin Johnson would not have claimed the privilege. We granted certiorari, and we also affirm, but for reasons different than those relied upon by the intermediate appellate court.

## II.

In *Christensen v. State*, 274 Md. 133, 134–35, 333 A.2d 45 (1975), we approved the general statement of the missing witness rule set forth in 1 Underhill, *Criminal Evidence* § 45 (rev. 6th ed. P. Herrick 1973):

The failure to call a material witness raises a presumption or inference that the testimony of such person would be unfavorable to the party failing to call him, but there is no such presumption or inference where the witness is not available, or where his testimony is unimportant or cumulative, or where he is equally available to both sides. The presumption or inference that the testimony of a missing witness would be unfavorable is applied most frequently when there is a relationship between the party and the witness, such as a family relationship, an employer-employee relationship, and, sometimes, a professional

relationship. Generally, the accomplice-defendant relationship does not raise an inference against the defendant. In view of his constitutional privilege, no inference is raised against a defendant who does not testify, but if he does become a witness and then fails to explain away incriminating circumstances, such failure may be taken against him.

In *Christensen,* we held that the State's request for a missing witness instruction should have been denied because the State's evidence showed that the witness was an accomplice. We quoted with approval the statement from 1 Wharton, *Criminal Evidence* § 148 (13th ed. C. Torcia 1972) that:

No inference arises if the person not called as a witness by the defendant is a codefendant or an accomplice not presently on trial, or has already been convicted of the same offense as that for which the defendant is being prosecuted.

We explained that under the circumstances there present, it was probable that the witness, if called, would claim the privilege against compelled self-incrimination and refuse to testify. We said that because the State's evidence implicated the witness and the defendant as joint actors, the refusal of the witness to testify might well prove damaging to the defendant's case. Under those circumstances, we concluded that a person in the position of the defendant might very well decline to call the witness even though the witness's testimony, if given, would be favorable to the defendant. The factual predicate for an inference of unfavorable testimony having thus been undercut, we held the instruction should not have been given.

The defendant here suggests that the exception to the missing witness rule involving codefendants and accomplices exists only because those persons may be expected to refuse to testify if called. Building on this premise, he argues that the missing witness inference should not be available whenever it appears probable that the witness is entitled to, and will, invoke the privilege against self-incrim-

ination. We agree that Alvin Johnson, if he exists and was involved, would more than likely have refused to testify. We conclude, however, that the defendant's view of the codefendant-accomplice exception to the missing witness rule is incorrect.

In *Christensen*, the mere fact that the witness would probably refuse to testify was not the dispositive factor. Rather, we were there concerned with the harm that would probably be done to the defendant's case if the accomplice invoked the privilege in the presence of the jury. As we shall point out, that potential for harm was not present here. Professor Wigmore has suggested that where the witness has a privilege of this kind, the witness should at least be summoned and asked, for he may waive the privilege. 2 *Wigmore on Evidence* § 286 at 201 (Chadbourne rev. 1979). Additionally, it should be kept in mind that the witness may be questioned out of the presence of the jury concerning the privilege, and if a privilege is claimed the trial judge may use that information to rule out a missing witness instruction. *See State v. Crews*, 208 N.J.Super. 224, 505 A.2d 198, 202–03 (1986). Unless the party against whom the inference might otherwise be drawn requests that the claim of privilege be repeated by the witness in the presence of the jury, there will be no need to inform the jury of what has transpired. Under appropriate circumstances, the jury may be instructed that the court has determined that the witness is unavailable, and that no inference may be drawn from the failure of either party to call that witness.

We do not suggest that the privileged witness must always be called in order to avoid the unfavorable inference. Where the uncontroverted evidence demonstrates that the witness does exist, was involved, and probably would claim the privilege if called, the trial judge may rule on the availability of the inference without requiring that the witness actually be called. *See Lawson v. United States*, 514 A.2d 787 (D.C.App.1986). Borrowing from the venera-

ble maxim that equity will not require the doing of a vain or useless thing,[3] we recognize that needless formalities should not be indulged. Where the determination of whether the inference should be permitted is solely dependent upon the probability of the witness claiming the privilege, that determination may be made, under appropriate circumstances, without requiring that the witness be called.

■ This is not such a case. Alvin Johnson's existence and his involvement in this case were not demonstrated by any evidence other than the testimony of the defendant. It is not uncommon for one found in exclusive possession of recently stolen property to fabricate a story involving another person as the provider of the property—some person often said to be known only by a street name, who supposedly gave, sold, or loaned the property to the defendant under the most innocent of circumstances. When a defendant puts forth such a story, it would be entirely reasonable for the jury to draw an inference unfavorable to the defendant if the defendant does not produce that person as a witness or offer some reasonable explanation for his failure to produce the witness. Under the circumstances of this case, a fair inference from the unexplained failure to produce Alvin Johnson is that Alvin Johnson was not involved at all,[4] or had not provided the defendant with the property under the circumstances testified to by the defendant. The

---

3. *See Foster v. Mansfield, Coldwater & c. Railroad,* 146 U.S. 88, 101, 13 S.Ct. 28, 33, 36 L.Ed. 899 (1892).

4. The instruction requested by the State, and given by the trial judge, was limited to the inference that could be drawn if one assumed that a person named Alvin Johnson was actually known to the defendant. The State was free to argue, and did argue, that the defendant may well have plucked the name of Alvin Johnson from the air and it was for that reason that no witness by that name was called. Of course, the State also argued in favor of the inference described by the instruction, which assumed that someone named Alvin Johnson did exist and was known to the defendant. The defendant cannot complain that the State might have requested a broader instruction describing other unfavorable inferences which might have been drawn by the jury.

inference, then, is that the witness was not called because Alvin Johnson, if he exists at all, would have testified that he was not there that night, or that he was not involved with the defendant or the Toyota, or would otherwise have testified unfavorably to the defendant.

There is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts. Even had there been no instruction concerning the availability of this inference, we think it likely that among the first questions posed in the deliberation of this case would have been, "Why didn't the defendant produce Alvin Johnson?" Only if, as a matter of law, the unfavorable inference could not have been drawn by the jurors would the trial judge have been authorized to prohibit the prosecutor from posing that same question in argument. And, only if the circumstances were such that the trial judge should have prohibited the argument would we be likely to reverse because the instruction was given. If the argument fairly may be made, then it stands to reason that a sufficient foundation of facts exists upon which the inference [5] may be drawn.[6] Where the inference may be drawn, it will ordinarily be within the discretion of the trial judge to grant

---

**5.** Although many of the earlier cases and the text writers have used the terms "presumption" and "inference" interchangeably when discussing the missing witness rule, the proper reference is to an inference and not to a presumption. This distinction may be significant in a criminal case in which the State is urging the fact finder to infer facts in support of its case against the accused. *See Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Turner v. State*, 55 Md.App. 367, 371 n. 1, 462 A.2d 70 (1983), vacated in part on other grounds, 301 Md. 180, 482 A.2d 869 (1984).

**6.** In a criminal case, an inference may be utilized as a part of the prosecutor's proof only when the inferred fact is more likely than not to flow from the proven fact on which it is made to depend. *Ulster County Court v. Allen*, 442 U.S. 140, 165–67, 99 S.Ct. 2213, 2228–30, 60 L.Ed.2d 777 (1979); *Leary v. United States*, 395 U.S. 6, 36, 89 S.Ct. 1532, 1548, 23 L.Ed.2d 57 (1969).

or refuse a missing witness instruction.[7] Often, the instruction is given so that the jury will be aware of the limitations which apply in the case of the missing witness inference. That purpose was fully accomplished here. The trial judge, after a general discussion of circumstantial evidence, told the jury of the availability of the missing witness inference. He then said:

> It is up to you to decide whether or not the defendant should naturally have called that witness. This rule does not apply where the testimony of the uncalled witness, a Mr. Johnson, is purely cumulative.... Nor does the rule apply where the reasons for not calling the witness are reasonable and proper.

Here, the underlying facts were sufficient to permit the unfavorable inference, and the trial judge did not abuse his discretion in giving the instruction.

 Not uncommonly, the reason given for a failure to produce a witness is that the defendant is unable to locate the witness. That explanation, if believed, would be sufficient to avoid the unfavorable inference that would otherwise logically arise. *Thomas v. United States*, 447 A.2d 52, 57 (D.C.App.1982). In the absence of some reasonable explanation for the failure to call the alleged provider of stolen goods, however, the fair inference of fabrication should be available to the trier of fact. *See Phelps v.*

---

7. We do not suggest that a trial judge would err in refusing to give a missing witness instruction even when the facts would support the inference. It is a proper function of the trial judge to instruct the jury concerning its fact-finding function, and in an appropriate case to include an explanation concerning circumstantial evidence and the proper utilization of inferences. Some inferences, well known in the law but perhaps not as obvious to lay jurors, should be explained in reasonable detail. In other instances, a general description of the acceptable process of fact-finding by inference may be all that is required, leaving to counsel the argument of whether a particular inference should be approved by the jury. The discretion that is present in the trial judge is the discretion to grant or deny the specific instruction when the facts would support the inference. There is, of course, no discretion to grant the instruction where the facts do not support the inference.

*Commonwealth,* 255 Ky. 655, 75 S.W.2d 217 (1934). The defendant offered evidence from which the jury might have found that it would have been difficult for him to locate Johnson. According to the defendant, sometime during the preceding year, Johnson had moved from the place where the defendant knew he lived. However, the defendant also said he knew Johnson well, knew where he worked, and had seen him on several occasions since the incident. The defendant's testimony, while perhaps sufficient to allow the trier of fact to consider whether difficulty in locating the witness was the reason Johnson was not called, was hardly sufficient to compel that conclusion by the trial judge. Similarly, although the jury might have concluded that the inference should not be drawn because the defendant's failure to produce the witness was simply the product of fear, that decision was also for the jury.

This case differs significantly from *Christensen* because, according to the defendant's testimony, there was no reasonable possibility that the defendant's case would be harmed even if Johnson were called and he claimed the privilege in the presence of the jury. The defendant's testimony demonstrated that Johnson was probably guilty of a crime. The defendant said he had seen Johnson driving the car on the day preceding the incident. He also said that at the time he borrowed the car, he believed Johnson when Johnson said the car belonged to his cousin. However, the defendant said that after the police showed him that the ignition lock had been "popped," and after Johnson walked away from him when he attempted to have Johnson explain the circumstances to the police, the defendant realized that Johnson must have known the car was stolen. That being the case, if the defendant had called Johnson as a witness and Johnson had refused to testify, the refusal would have been entirely consistent with the defendant's version of the facts, and would not have been damaging to the defendant's case. According to the only evidence in the case relating to Johnson, he was neither an accomplice nor a codefendant. He was the probable thief or receiver of the stolen car, who

had misled the defendant. The reasonable fear of calling a witness that was present in *Christensen* was not present here.

### III.

Finally, the defendant contends that the missing witness instruction should not have been given because the testimony of Alvin Johnson would have been merely cumulative to that previously given by the defendant. As we pointed out in *Christensen*, the inference cannot be drawn "when the witness is not available, or where his testimony is unimportant or cumulative, or where he is equally available to both sides." *Christensen v. State, supra*, 274 Md. at 134, 333 A.2d 45, quoting 1 Underhill, *Criminal Evidence* § 45 (rev. 6th ed. P. Herrick 1973). *And see Critzer v. Shegogue*, 236 Md. 411, 419–23, 204 A.2d 180 (1964); *Smith v. State*, 66 Md.App. 603, 620–21, 505 A.2d 564 (1986); *Woodland v. State*, 62 Md.App. 503, 510–12, 490 A.2d 286 (1985); *Nelson v. State*, 5 Md.App. 109, 120–21, 245 A.2d 606 (1968). *See also* 2 *Wigmore on Evidence* § 286 (Chadbourne rev. 1979) (inference not available with respect to witness whose testimony would be comparatively unimportant, or cumulative, or inferior to what is already utilized, so that the testimony might well be dispensed with by a party on general grounds of expense and inconvenience).

 ■ We do not reach this contention because it was not presented in the trial court or, as far as we can tell, in the Court of Special Appeals. The defendant objected to the missing witness instruction only on two grounds: 1) that the witness was equally available to both parties;[8] and 2) that the rule did not apply because the witness would more likely than not claim a privilege against self-incrimination. Ordinarily, this Court will not decide an issue unless it

---

8. The Court of Special Appeals rejected the first ground, noting that the defendant possessed exclusive knowledge concerning the witness and his whereabouts up to the moment he testified at the trial. The defendant did not renew this argument before us.

plainly appears to have been raised in, or decided by, the trial court. Maryland Rule 8–131(a).

We add, however, that if this issue were before us, the outcome would not be different. Under the circumstances of this case, we would not have disturbed a finding by a trial judge that the presence and testimony of Alvin Johnson could not be characterized as unimportant, cumulative, or inferior evidence within the meaning of the missing witness rule. Although the testimony of Johnson might have been corroborative, it was not cumulative in the sense of being unnecessarily redundant. *See State v. Clawans*, 38 N.J. 162, 183 A.2d 77, 83 (1962).

JUDGMENT AFFIRMED, WITH COSTS.

ADKINS, Judge, dissenting.

"[W]hen a party ... fails ... without explanation, to produce relevant, noncumulative, unprivileged evidence to which he or she has superior access, the jury may be instructed that it may infer that the evidence would have been unfavorable to that party." 5 L. McLain, *Maryland Practice: Maryland Evidence* § 301.4 (1987) at 229 [footnote omitted]. On the other hand " '[n]o inference arises if the person not called as a witness by the defendant is a codefendant or an accomplice not presently on trial, or has already been convicted of the same offense as that for which the defendant is being prosecuted.' " *Christensen v. State*, 274 Md. 133, 139–140, 333 A.2d 45, 48–49 (1975) (quoting 1 Wharton, *Criminal Evidence*, § 148 at 251 (13th ed. C. Torcia 1972).

In the case before us, the missing witness was not a codefendant or accomplice of petitioner Walter E. Robinson, nor had the witness been convicted of the same offense (theft of an automobile) for which Robinson was on trial, but he was a person implicated in criminal conduct by Robinson's testimony. The trial court gave a missing witness instruction. The majority, declining to apply *Christen-*

*sen's* reasoning beyond its specific facts, upholds that action. I respectfully dissent.

The rationale supporting the missing witness doctrine has been summarized thus: "The nonproduction of a witness indicates that the party fears what the witness would say if called, from which the fact-finder may conclude that the content of the witness' testimony would be unfavorable to the party." Stier, *Revisiting the Missing Witness Inference: Quieting the Loud Voice from the Empty Chair*, 44 Md.L.Rev. 137, 142 (1985). But because "[t]he empty chair now speaks too eloquently," *id.* at 175, "courts have reacted to the rule's potential inaccuracy and unfairness by decreasing the number of situations in which the adverse inference might be applied...." *Id.* at 151.[1] An example of this prudent limitation of the doctrine is found in *Christensen*.

In that case Christensen was charged with attempted rape and related offenses. The prosecuting witness testified that Jesse Paine forced her to enter a vehicle, after which Christensen attempted to rape her, telling Paine that

---

1. The inference is at best a weak one. Even if a party knows the identity and whereabouts of a witness, the witness is subject to subpoena and can give testimony favorable to the party, there may be tactical reasons for not calling that witness. The witness may be subject to impeachment by former conviction, inarticulate, or present a poor appearance, for example. None of these reasons for not calling a witness raises an inference of unfavorable testimony if the witness is not called. *See Burgess v. United States*, 440 F.2d 226, 234 (D.C.Cir.1970); Stier, *Revisiting the Missing Witness Inference: Quieting the Loud Voice from the Empty Chair*, 44 Md.L.Rev. 137, 153 (1985); Livermore, *Absent Evidence*, 26 Ariz.L.Rev. 27, 30 (1984). *See also State v. Gross*, 216 N.J.Super. 92, 96, 523 A.2d 212, 214, *certification denied*, 108 N.J. 194, 528 A.2d 19 (1987) ("failure to produce named witness may have any number of innocent explanations which cannot readily or appropriately be exposed at trial"). Some states bar the missing witness doctrine altogether in criminal cases. *See State v. Brewer*, 505 A.2d 774, 777 (Me.1985); *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988); *State v. Jefferson*, 116 R.I. 124, 353 A.2d 190 (1976). In the criminal law context, there may be constitutional problems as well. *See e.g.*, Comment, *Drawing an Inference from the Failure to Produce a Knowledgeable Witness: Evidentiary and Constitutional Considerations*, 61 Cal.L.Rev. 1422 (1973). We did not address the constitutional issues in *Christensen v. State*, 274 Md. 133, 134, 333 A.2d 45, 46 (1975), and none are raised in this case.

Christensen "would 'get her first' and that Paine could 'have her after....' " *Christensen,* 274 Md. at 136, 333 A.2d at 47. All this Christensen denied. Paine did not testify. The trial judge refused to instruct the jury that " 'there [was] no duty on the defendant to produce [Paine] and no inference [should] be drawn from the fact that he wasn't produced.' " *Id.* Christensen was convicted. We reversed.

Judge Smith, for the Court, recognized the missing witness rule. 274 Md. at 134–135, 333 A.2d at 46. But, as we have seen, the Court applied what is sometimes called the "accomplice" exception to it, an exception characterized as representing "the better and the majority rule." *Id.* at 140, 333 A.2d at 49. Paine, according to the prosecuting witness, was Christensen's accomplice. Judge Smith explained:

> [C]ounsel for Christensen probably was correct in believing that, if Paine were summoned to the witness stand by Christensen, Paine's counsel might well advise him to invoke his constitutional right against self-incrimination, notwithstanding the fact that his testimony might serve to corroborate that of Christensen and that if he testified Paine might claim that the incriminating testimony of the prosecutrix was untrue. Under the facts of this case, a defendant might well be damaged if an accomplice or codefendant were called to the stand and then did not testify, claiming his privilege against self-incrimination. In short, if the exception to the rule for a codefendant or an accomplice did not exist, the defendant would be faced with a Hobson's choice incompatible with our concept that a defendant is innocent until proven guilty beyond all reasonable doubt and that the burden of proof never shifts from the State.

*Id.*

In the case before us, it is true, we are not dealing with a missing witness who was an accomplice. The individual in question was identified as Alvin Johnson, a friend of Robinson's, from whom Robinson had borrowed an automobile.

The automobile was stolen; Robinson was apprehended while driving it; his sole defense was that Johnson had allowed him to use the car, and had said it belonged to Johnson's cousin. Robinson also testified that Johnson was at the scene when the police stopped the car and arrested Robinson, and that Robinson, then realizing that Johnson was the thief, pointed the latter out to the police, but they disregarded this information. Under these circumstances, the majority concedes that were Johnson called as a witness to support Robinson's testimony, it is likely that Johnson would claim his privilege against self-incrimination. After all, if Robinson was telling the truth, Johnson was, at the very least, one who had been in possession of recently stolen goods, and this fact allows the trier of fact to draw an inference that the possessor is the thief. *Cross v. State,* 282 Md. 468, 480, 386 A.2d 757, 765 (1978). But in the majority's view

> [i]n *Christensen,* the mere fact that the witness would probably refuse to testify was not the dispositive factor. Rather, we were there concerned with the harm that would probably be done to the defendant's case if the accomplice invoked the privilege in the presence of the jury.

Maj. op. at 316. According to the majority, that likelihood of harm is not present here. I disagree both with that conclusion and with its premise.

As to the conclusion, the majority argues that a claim of privilege by Johnson, in the presence of the jury, would not be harmful to Robinson's case. This claim, it is said, would be wholly consistent with Robinson's defense that he was the innocent borrower of a stolen car and thus would support Robinson's testimony rather than undermine it. It is otherwise in the *Christensen* circumstances, for the claim of privilege by the alleged accomplice there would have tended to establish the very fact that the crime for which Christensen was on trial had been committed. And since in *Christensen* both Paine and Christensen were placed at the

scene of that crime, the prosecuting witness's testimony would have been substantiated, to Christensen's detriment.

It is certainly true that *Christensen* is factually distinguishable from this case. But the notion that Robinson could not have been harmed had Johnson been called and claimed his privilege assumes too much sophistication on the part of the jury. It may or may not be aware of the inculpatory effect of possession of recently stolen goods and regardless of that knowledge might well assume that Johnson's refusal to testify was based on Johnson's complicity, along with Robinson's, in the theft itself. Thus, Johnson's claim of privilege might indeed be harmful to Robinson.

Beyond that, however, the majority reads *Christensen* too narrowly. It is correct that one basis for the decision is that harm that might be done by an accomplice claiming before the jury the privilege against self-incrimination. But the "Hobson's choice" to which Judge Smith referred was not merely the choice between that harm and the adverse inference drawn from the absence of a witness. There is another Hobson's choice: what if the witness, himself implicated in the crime, decides to testify falsely in an effort to exculpate himself and throw all the blame on the defendant? That was a possibility in *Christensen*, and it is certainly a possibility here.

It was also a possibility recently recognized in the factually similar case of *State v. Gibson*, 735 S.W.2d 756 (Mo.Ct. App.1987). In that case, Gibson was arrested while driving an automobile which was stolen from a car rental agency. He was charged with auto theft. At trial, he testified that a friend of 24 years had leased the automobile to him for three days for $75.00. In the course of closing argument, the prosecutor, in essence, invited the jury to draw an adverse inference from Gibson's failure to produce his friend as a witness. The trial court sustained defense counsel's objection and cautioned the jury to disregard the remark, but denied counsel's subsequent motion for a mistrial. Although the Missouri Court of Appeals found insuf-

ficient prejudice to warrant a mistrial, it indicated that "[a]ssuming the defendant's trial testimony was truthful it is logical and understandable that defendant's 'friend' would be unlikely to appear and admit his own guilt." *Id.* at 759.

It follows, therefore, that "[a] witness who has been identified by the defendant as the perpetrator of the crime, ... or who has a fifth amendment privilege as to the testimony in question is not considered available to either party" within the meaning of the missing witness rule. *Lawson v. United States*, 514 A.2d 787, 791 (D.C.App.1986) [citations omitted]. A missing witness instruction is, of course, inapplicable where the witness is unavailable to either party. *Christensen*, 274 Md. at 134, 333 A.2d at 46.

In short, under circumstances like those here, the inference that the missing witness, if he were called, and if he testified truthfully, would testify adversely to the defendant does not apply. There is the possibility of harm if the witness claims the privilege. Even if that problem is avoided by a proceeding out of the presence of the jury, there is danger that a witness, him or herself identified as being involved in a possible crime, might not claim the privilege but rather testify in an exculpatory albeit false fashion.[2]

In *Simpson v. State*, 34 Md.App. 378, 367 A.2d 66 (1977), Judge Moylan correctly applied the *Christensen* principle to a missing witness who was neither accomplice nor codefendant. I would adopt the holding of *Simpson*, and conclude

---

2. The majority argues that in this case, even absent an instruction, the jury might have drawn certain inferences by virtue of the absence of Alvin Johnson. One of them, the majority suggests, was, as the State argued, that Johnson was a figment of Robinson's imagination. The issue in this case, however, is not what inferences the jury might have drawn or what arguments might be proper. Nor is it under what circumstances a judge should advise the jury that no inference may be drawn from a witness's absence. The issue is whether it was proper for the judge to give the instruction he gave. That instruction assumed the existence of Johnson and added a judicial imprimatur to the adverse inference that might be drawn from his absence. Under the circumstances of this case, it was error for the judge to emphasize and give approval to an inference as dubious as this one.

that the missing witness instruction should not have been given in Robinson's case.

Moreover, I believe the error to be reversible. During the course of the trial, the jury sent in notes evincing considerable interest in Alvin Johnson and his absence from the proceedings. As the State conceded at trial, the only real issue was Robinson's credibility. In this situation, the State's reliance on the adverse inference authorized by the missing witness instruction cannot be said to have been harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 659, 350 A.2d 665, 678 (1976). *See Simpson*, 34 Md.App. at 383, 367 A.2d at 69; *see also Lawson*, 514 A.2d at 793; *Thomas v. United States*, 447 A.2d 52, 59 (D.C. 1982); *State v. Francis*, 669 S.W.2d 85, 91 (Tenn.1984). I would reverse.

Judges ELDRIDGE and COLE have authorized me to say that they join in this dissenting opinion.