490 A.2d 286

**John H.C. WOODLAND**

v.

**STATE of Maryland.**

**No. 1005, Sept. Term, 1984.**

Court of Special Appeals of Maryland.

April 9, 1985.

504

Patrick D. Hanley, Assigned Public Defender, Towson (Alan H. Murrell, Public Defender, Baltimore, on the brief), for appellant.

Zvi Greismann, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kurt L. Schmoke, State's Atty., and Sam Brave, Asst. State's Atty. for Baltimore City, Baltimore, on the brief), for appellee.

Argued Before GARRITY, ADKINS and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

Appellant, John H.C. Woodland, was tried by a jury in the Circuit Court for Baltimore City on two counts of murder in the first degree, and counts of assault with intent to murder and related use of a handgun in the commission of a crime of violence. He was convicted of both murder counts and the related handgun counts and acquitted of assault with intent to murder and its related handgun charge. After being sentenced to consecutive life, plus fifteen years sentences, appellant appealed to this Court.

Although seven bases for reversal are urged, we need only consider three:

I. THE TRIAL COURT COMMITTED ERROR WHEN, AFTER THE PROSECUTOR HAD ARGUED THE MISSING WITNESS RULE, IT REFUSED TO INSTRUCT THE JURY THAT APPELLANT DID NOT HAVE THE BURDEN TO PROVE HIS INNOCENCE

II. THE TRIAL COURT COMMITTED ERROR IN GRANTING THE STATE'S REQUEST FOR A PARTICIPATION INSTRUCTION

## III. THE EVIDENCE WAS LEGALLY INSUFFICIENT TO SUSTAIN GUILTY VERDICTS

### 1.

During voir dire of prospective jurors, the trial court propounded the following question:

There may be certain witnesses called in this case, ladies and gentlemen. I'm now going to read their names and addresses or assignments to you. I'm going to pause after each name, and I want anyone who is related to or acquainted with the person who's [sic] name I have read to stand up.

Among the names read were George Woodland and George Russell. Neither was called by appellant to testify.

Appellant testified in his own defense and denied any involvement in the crimes. His testimony was that he was on his way to 701 Mulberry Street, to a friend's house, when he heard shots; he ducked down near a car; he saw a person run by him and drop a gun, which he picked up; he ran with the gun in hand; and he was stopped by the police and arrested. On cross-examination, the prosecutor developed the name of the friend as Abdula Mateen Matuking. He then determined that appellant had talked to Abdula on the telephone earlier in the day and learned that Abdula would be home for the evening on the night in question but no arrangements to meet were made. Abdula, who was incarcerated at the time of trial, was not called by appellant.

During rebuttal closing argument, the prosecutor argued:

[BY MR. BRAVE]

... That is one example of how Mr. Cardin has—forget not playing fair. Doing his job and doing it beautifully. And he brings character witnesses. He asked you on voir dire the name of John Woodland, George Russell, have all been tossed around here. We haven't heard from George Woodland. We haven't heard from George Russell. How do you know how they feel?

How do you really know? This is another example of
the matter of defense attorney—... doing his job.

After appellant's objection was overruled, he continued:

How do you know that they are not vastly relieved that
their nightmare is finally, or hopefully finally, over?
How do you know that?

Mr. Cardin just throws these names out hoping that
they will make a connection with you, George Russell,
George Woodland, John Woodland ...

Later, the prosecutor returned to the subject of appellant's
failure to call witnesses:

... Now, you've already seen the skill of the defense.
Why didn't you put some of that skill to work finding Mr.
Abdule whatever his name is? Why didn't—why didn't—
when this story unfolds, for the first time

Again, appellant's objection was overruled and the prosecu-
tor continued:

You mean you were down there to visit Abdule whatev-
er? We know where he is now. He's incarcerated. He's
easy to find. Right then and there, why not a phone call?
Abdule, you'll never guess what happened, where I am.
I'm sitting here in City Jail. I'm walking on the way
down to your house at seven—it's true I didn't call you or
anything, but I had confidence you were going to be
there, and on my way down, guess what kind of jackpot I
got into? And it may be necessary, if I want to catch
you, so don't you forget this. It may be necessary
sometime in the future for you to come forward and say,
yeah, we had talked about meeting that night. Wouldn't
that be where some of his skill should have been direct-
ed? ...

Following the court's instructions to the jury, the follow-
ing colloquy occurred at the bench:

[MR. CARDIN]

... I've also, during closing arguments, wanted to—I
objected to Mr. Brave making certain comments about
calling the defense, being able to call any witness. I did

not hear the Court instruct the jury that there is no obligation on the Defendant to produce any evidence whatsoever. I believe that is an appropriate instruction. That's why I objected to his making that comment, and I'm going to ask the Court to instruct the jury.

THE COURT: What do you want me to instruct the jury?

MR. CARDIN: Maybe I missed it, but usually in the boiler plate, the early part of the instructions, the Court indicates to the jury the instruction to the jury that of course the presumption of innocence, and that the burden rests upon the State, and that there is no burden on the Defendant to prove himself innocent, nor to present any evidence whatsoever.

THE COURT: I can give the first part of what you said, but certainly hear it argued all the time, but there are cases where a missing witness rule is appropriate. And this isn't that case, but I mean you and I both have seen criminal cases where the State's entitled to a missing witness rule. So there is a duty in some cases about witnesses. I didn't say this was the appropriate case, but I think that it was appropriate argument for Mr. Brave to make that. What was his name? Abdule somebody could have been produced by the Defendant, if in fact he could corroborate his story. So I think it's proper. You have your exception, but I'm not going to modify it.

MR. CARDIN: That will be the only exception.

THE COURT: Thank you very much.

\* \* \* \* \* \*

Against this background, appellant argues that the court erred in allowing the State to argue the inference to be drawn from a missing witness when the State was not entitled to a missing witness instruction. This error, coupled with the court's further error in refusing appellant's requested instruction that he did not have any burden to call any witnesses, appellant continues, "... effectively denied Appellant his constitutional right to confrontation

and cross-examination ..." and "his right to due process ... because ... it had the effect of shifting the burden of proof from the State to appellant." Appellant also maintains that the requested instruction was and is a correct statement of the applicable law and should have been given in view of the prosecutor's argument, which rendered the court's instructions deficient as to the legal principle espoused by appellant. Finally, he claims prejudice sufficient to compel reversal.

As we begin our analysis, we note that the witnesses whose absence was argued by the prosecutor were of different types: Woodland and Russell were character witnesses and Matuking was a fact witness.

The Court of Appeals, in *Christensen v. State*, 274 Md. 133, 134, 333 A.2d 45 (1975),[1] citing 1 Underhill *Criminal Evidence*, Sec. 45 (Rev. 6th ed. P. Herrick 1973) set out the missing witness rule:

> The failure to call a material witness raises a presumption or inference that the testimony of such person would be unfavorable to the party failing to call him, but there is no such presumption or inference where the witness is

---

1. The Court in *Christensen* found it unnecessary to determine if the "application of the 'missing witness' rule in criminal cases is an unconstitutional deprivation of the defendant's right to confrontation and cross-examination ..." since it found the accomplice-defendant relationship exception controlling and therefore, found the rule inapplicable to the facts of the case. Because the court permitted the State to argue the rule in the face of a "reverse missing witness" prayer, the defendant's conviction was reversed.

Likewise, we found no occasion to address the "per se" applicability of the rule in *Pierce v. State*, 34 Md.App. 654, 369 A.2d 140 (1977), where we said:

> Although it would appear that the Wharton exception has become the Maryland Rule, it would seem apparent that the adoption of the exception presupposes the recognition of the rule. But that is neither what the Court of Appeals held, nor is it necessary for us to decide here.

Again, we need not address the applicability of the rule to the case *sub judice*, or its constitutionality. The issue here is whether the State's argument based on the missing witness rule made necessary a jury instruction that a defendant does not have to produce any witnesses and bears no burden of proof.

not available, or where his testimony is unimportant or cumulative, or where he is equally available to both sides. The presumption or inference that the testimony of a missing witness would be unfavorable is applied most frequently when there is a relationship between the party and the witness, such as a family relationship, an employer-employee relationship and, sometimes, a professional relationship. Generally, the accomplice-defendant relationship does not raise an inference against the defendant. In view of his constitutional privilege, no inference is raised against a defendant who does not testify, but if he does become a witness and then fails to explain away incriminating circumstances, such failure may be taken against him.

It has been defined in other terms. We, in *Pierce v. State*, 34 Md.App. 654, 658, 369 A.2d 140 (1977) said:

The "missing witness rule",

"... even in criminal cases is that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021.

See also 1 *Wharton: Criminal Evidence* § 148 (13th Ed. C. Torcia 1972).

■ Thus, the missing witness rule applies where (1) there is a witness, (2) who is peculiarly available to one side and not the other, (3) whose testimony is important and non-cumulative and will elucidate the transaction, and (4) who is not called to testify. The inference to be drawn from the failure to call a witness will arise only if the relationship between the defendant and the witness is one of interest or affection. 1 *Wharton's Criminal Evidence, supra*, § 149. The inference will not arise if the relationship is that of accomplice/defendant, *Christensen v. State, supra*, although the defendant's conviction will not be set

aside if the prosecution argues the rule and no request for a reverse missing witness instruction is made. *Pierce v. State, supra.*

With these principles in mind, we will proceed to an analysis of the issues in the case *sub judice.*

■ George Russell and George Woodland occupy a similar, if not identical position. Neither meets the prerequisites for a missing witness whose absence gives rise to an unfavorable inference. The record does not contain any information from which it could be concluded that they were fact witnesses whose testimony would elucidate the transaction. Other than the context of the closing argument and appellant's failure to correct the prosecutor, there is nothing in the record to suggest what, if anything, Russell and Woodland would have testified about. Thus, the materiality of their testimony or even their availability is not evident from this record. Although Woodland was mentioned and identified, by appellant and one other witness at trial, as appellant's uncle, there is absolutely no reference in the record to Russell's relationship to appellant.

From the context in which they were mentioned by the prosecutor and the absence of any other indication that their testimony was relevant to the transaction, Russell and Woodland appear to have been character witnesses. Assuming *arguendo* that the missing witness rule applies to character witnesses, the argument was nonetheless improper. Appellant called three character witnesses; therefore, Russell's and Woodland's character evidence would have been cumulative.

■ Abdula presents a different analysis. His testimony could only have corroborated appellant's assertion that he had spoken to Abdula on the evening of the murders, learned he would be home and, though no time was given, indicated he would be by that night. Abdula was not an accomplice and, as appellant's friend, he would appear to have the requisite relationship. The relevant inquiry then is

his materiality or importance of his testimony. We are of the opinion that Abdula, in the context of this case, was not a material witness whose testimony would elucidate the transaction.

We conclude that the missing witness rule did not apply. We agree with the trial court that the prosecution was not entitled to a missing witness instruction. Nevertheless, the prosecutor was allowed to argue the rule. We turn to the issue whether that argument was proper.

A similar situation to that in the instant case was presented in *Pierce v. State, supra.* There, the prosecutor was allowed, over objection, to argue the missing witness rule even though the missing witness was an accomplice. No reverse missing witness instruction was requested as it was in *Christensen v. State, supra.* Finding no error, we said: (34 Md.App. at 662, 369 A.2d 140)

> ... there is a clear distinction between that which a trial judge *must* instruct a jury when requested and that which counsel *may* argue to it. (emphasis in the original)

We next noted that Md.Rule 756e did not "preclude counsel from arguing to the contrary" when the court instructed first. Then we said: (at 662, 369 A.2d 140)

> If it is not apparent from that rule that the Court of Appeals recognizes the right of counsel to argue legal presumptions or legitimacy of inferences which may be contrary to Maryland law, the Court of Appeals' cases make it abundantly clear. They rest upon Maryland's unique blessing or burden, that "the Jury shall be the Judges of the Law, as well as facts", Md. Const., Art. XV, § 5; from which it reasonably follows, that if the jury is the judge of the law, legal argument may be made to it. *Schanker v. State*, 208 Md. 15, 21 [116 A.2d 363]; *Wilkerson v. State*, 171 Md. 287, 290 [188 A. 813]; *Samson v. State*, 27 Md.App. 326 [341 A.2d 817]. The right to argue conflicting interpretations of the law, or the application thereof in dubious factual situations, e.g., *Schanker v. State, supra,* has been held proper even in the face

of instructions to the contrary, *Wilson v. State,* 239 Md. 245, 255–256 [210 A.2d 824], without regard to Md.Rule 756e.  Because we have so recently spoken upon the right of counsel to argue relevant law to the jury (as well as the limitations upon that right), *Samson v. State, supra,* suffice to say the right is well preserved, both by the Court of Appeals and by this Court, as long as Maryland retains its unique constitutional provision.

*Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980) and *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981) have seriously undermined, if not totally destroyed, the precedential value of this aspect of *Pierce.*  In *Stevenson,* the Court of Appeals held:

> ... the jury's role in judging the law under Article 23 [of the Maryland Declarations of Rights] is confined *"to resolv[ing] conflicting interpretations of the law [of the crime]* and to decid[ing] whether th[at] law should be applied in dubious factual situations,"* and nothing more. *Dillon v. State,* 277 Md. 571, 581, 357 A.2d 360, 367 (1976) (emphasis in original) id. 179, 423 A.2d 558.

The Court clarified the effect of *Stevenson* on the right of counsel to argue conflicting theories of law to the jury when, in *Montgomery,* 292 Md. at 89, 437 A.2d 654 it said:

> ... in those circumstances where there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury and counsel as well.

Md.Rule 4–325(f) reflects this standard:

> Nothing in this Rule precludes any party from arguing that the law applicable to the case is different from the law described in the instructions of the court stated not to be binding.

In any event, we continue to be persuaded by the observation of Chief Judge Gilbert in *Allnutt v. State,* 59 Md.App. 694, 703, 478 A.2d 321 (1984):

> Instances of dispute of the law of the crime are an endangered species rapidly approaching extinction.  Once

an appellate court has ruled on the "law of the crime", the matter then becomes settled law, and thereafter the jury is no longer the judge of the law with respect to that particular matter. Consequently, disputes of the law will decrease in number with each successive appellate ruling.

We disagree with the trial court that it was proper for the state to argue the missing witness rule.[2] Allowance of the argument was error.

■ Turning to the issue of whether the error was harmless, we recall the warning given by the Court of Appeals in *Eley v. State,* 288 Md. 548, 419 A.2d 384 (1980):

Our decision today must not be interpreted as an invitation to the prosecution in a criminal case to comment upon the defendant's failure to produce evidence to refute the State's evidence. Such comment might well amount to an impermissible reference to defendant's failure to take the stand. Moreover even if such a comment were not held tantamount to one that defendant failed to take the stand it might in some cases be held to constitute an improper shifting of the burden of proof to the defendant.

Note 2, p. 555, 419 A.2d 384.

"As a general rule, it is reversible error for the prosecution to attack the character of the accused before it has been put in issue by him, or to show other unrelated crimes or misconduct likely to cause prejudice against him. *Dobbs v. State,* 148 Md. 34, 129 A. 275 [ (1925) ]" *Lowery v. State,* 202 Md. 314, 96 A.2d 20 (1953). A defendant's character is placed in issue if "... he states that he has a good character or a good record, or offers direct evidence of good character." *Braxton v. State,* 11 Md.App. 435, 274 A.2d 647 (1971). In this context, character refers to the propensity of a person to commit the kinds of act charged. *Id.* This is distinguished from character in the context of truth

---

**2.** The trial court expressed no opinion as to the propriety of the missing witness argument as it relates to character witnesses. It referred only to Abdula in its ruling.

and veracity, *Hurley v. State,* 6 Md.App. 348, 251 A.2d 241 (1969), for when a defendant testifies as a witness, his character for truth and veracity is at issue and he or she may be cross-examined on prior convictions to show that he or she is not to be believed. *Braxton v. State, supra.* The offering of character evidence to show that it is unlikely that the defendant committed the charged acts is a privilege. Thus, the prosecutor may not comment on its absence or the defendant's failure to produce it. *Blizzard v. State,* 30 Md.App. 156, 351 A.2d 443, rev'd on other grounds, 278 Md. 556, 366 A.2d 1026 (1976), 1 Wharton's Criminal Evidence, 13 Ed. § 229, pp. 489.

In the case *sub judice,* appellant placed his character in issue by producing three character witnesses. Therefore, it was appropriate for the State to produce evidence of bad character or to argue any unfavorable inference fairly generated by the testimony of such witnesses. *Trimble v. State,* 300 Md. 387, 478 A.2d 1143 (1984), *Poole v. State,* 295 Md. 167, 453 A.2d 1218 (1983), *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974). The prosecutor did neither, rather he went further: he commented on the failure of appellant to call two more character witnesses. This exceeded the bounds of permissible closing arguments as being a comment upon facts not in evidence, *Wilhelm v. State, supra, Barnes v. State,* 57 Md.App. 50, 468 A.2d 1040 (1984) and upon the failure of appellant to call character witnesses. *Blizzard v. State, supra.*

In *Blizzard v. State,* we commented that "[i]t is, of course, highly improper for the prosecutor to comment [in closing argument] upon an accused's failure to call character witnesses" because the decision whether to call such witness is a privilege of the accused. Unlike Blizzard, who did not call any character witnesses, appellant called three. Nevertheless, the argument was impermissible. In fact, it was more egregious for it effectively shifted the burden to appellant to call witnesses, a burden appellant did not have. See *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), *State v. Evans,* 278 Md. 197, 362 A.2d 629 (1976), *State v. Grady,*

276 Md. 178, 345 A.2d 436 (1975). The privilege to determine whether to call character witnesses necessarily includes the right to determine which ones to call. The State has no right, even when the privilege is exercised to require more or to speculate as to why some were not called.[3] This is true whether names are read during voir dire or not.[4]

Similarly, the prosecutor's argument based on the absence of Abdula compounded the error. It also had the effect of shifting the burden, to appellant.

The trial judge instructed the jury following closing arguments. He did not, as the State concedes, specifically instruct the jury that appellant did not have any burden of proof and did not have to call witnesses. The complained of arguments were made during the State's rebuttal closing argument. Therefore, appellant had no opportunity to respond, in kind, to them. Appellant's only recourse when his objections were overruled was to rely on the trial court's instructions. Its failure to give the requested instructions, under these circumstances, was an abuse of discretion. *Holbrook v. State*, 6 Md.App. 265, 250 A.2d 904 (1969).

The fact that statements may be improper does not necessarily require reversal. *Wilhelm v. State, supra, Curry v. State*, 54 Md.App. 250, 458 A.2d 474 (1983). In assessing whether a defendant has been prejudiced by such improper remarks, the Court of Appeals has observed:

---

**3.** It is appropriate under some circumstances, not here relevant, for the trial court in the exercise of its discretion to limit the number of character witnesses which a defendant may call. See case cited in Character Witnesses—Limiting Number, 17 A.L.R.3d 327 (1968). We have found no case which requires that a certain number of such witnesses be called by a defendant.

**4.** The prosecutor relied upon the fact that Woodland and Russell were mentioned as potential witnesses during voir dire. Certainly, the mere mention of the name of a potential witness during voir dire does not permit comment on the failure of that witness to be called. In this case, there was no indication on voir dire as to who might call the witness.

When in the first instance the remarks of the State's Attorney do appear to have been prejudiced, a significant factor in determining whether the jury were actively misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it.

*Wilhelm v. State*, 272 Md. at 423–424, 326 A.2d 707. Such actions may require the giving of curative instructions. *Conway v. State*, 7 Md.App. 400, 256 A.2d 178 (1969). Additional factors to be considered are the closeness of the case, and the centrality of the issue affected by the error. *Wilhelm v. State, supra.*

In the case *sub judice*, the trial judge, other than overruling appellant's objections and denying his request for supplemental instructions, took no action to mitigate the error. In fact, he had concluded that the arguments were not improper. The character of appellant was an important issue in the case and may have had an impact on the jury verdict. We are unable to conclude upon our independent review of the record that the failure to give the requested instruction was harmless beyond a reasonable doubt. *Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976), *Wilhelm v. State, supra.* We, therefore, reverse and remand for a new trial.

The two remaining issues will be considered together.

■ Appellant argues that there was insufficient evidence of his criminal agency to sustain the jury's verdict and that the jury should not have been instructed on the law of participation. We disagree. The evidence revealed that the victims of the homicide had both been shot, one, 10 times and the other, once. One of the bullets found in one of the victim's body came from a gun which appellant possessed when he was arrested a short distance from the incident.

Additionally appellant was found running from the direction of the incident. Finally, there was evidence of a Jaguar automobile which was in the area immediately prior to the homicides, which automobile, with license tags removed, was seen fleeing the area. There was ample evidence presented to support appellant's criminal agency, *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and to justify a participation instruction.

JUDGMENTS REVERSED; CASE REMANDED FOR A NEW TRIAL.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.