594 A.2d 1264

**Antoin L. GARRISON**

**v.**

**STATE of Maryland.**

**No. 1705, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Sept. 10, 1991.

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before GARRITY, ALPERT and DAVIS, JJ.

DAVIS, Judge.

Antoin L. Garrison, appellant, was convicted by a jury in the Circuit Court of Baltimore City of distribution of cocaine. He was sentenced to a term of ten years, dating from April 26, 1990. The appellant raises two contentions on this appeal:

1. Was the evidence sufficient to support appellant's conviction for distribution of cocaine?

2. Did the prosecutor's closing argument improperly shift the burden of proof to appellant?

## FACTUAL BACKGROUND

On April 26, 1990, at approximately 6:20 a.m., the Baltimore City Police Department dispatched Officer Darryl DeSousa to a covert position in the vicinity of Greenmount Avenue and the 400 block of Woreley Street. DeSousa observed Thomas Shuron standing on the corner with a female companion. The testimony indicated that Officer

DeSousa's vantage point was approximately 45 feet away from the pair.

According to DeSousa's testimony, appellant approached Shuron, whereupon the two engaged in a short conversation. The officer then saw Shuron hand the appellant an unknown amount of currency, after which appellant disappeared into the house at 406 Woreley Street for a minute. The appellant thereafter came out of the house and handed Shuron several small white objects, which Officer DeSousa suspected to be cocaine. The officer then radioed two of his partners who were around the corner, and another officer detained Shuron as appellant walked out of the view of DeSousa.

Officer Fitzgerald recovered seven postage stamp-size ziploc bags containing a white powder from Shuron while Officer Sewell simultaneously arrested appellant at the corner of Lafayette Avenue and Greenmount Avenue. According to the testimony, $39 was seized from the appellant although no drugs or paraphernalia were found on his person.

Officer Calvin Sewell testified that, upon receiving a call from Officer DeSousa, he went to the corner of North and Greenmount Avenues and placed the appellant under arrest. The seven small ziploc bags containing a white powder had been retrieved from Shuron by Officer Fitzgerald. The white powder contained in the bags was analyzed and found to be cocaine.

Appellant testified that he worked with his father in the home improvement business and that, on the day in question, he was en route to the place of employment when he was approached by Thomas Shuron who offered to sell him drugs. According to appellant, he refused to purchase the drugs and continued walking, whereupon he was arrested a short time later. He denied selling drugs or having entered 406 Woreley Street.

LAW

I.

## The Sufficiency of the Evidence

■ The short answer to appellant's first contention is that, under *State v. Lyles*, 308 Md. 129, 134–36, 517 A.2d 761 (1986),

> [a] motion which merely asserts that evidence is insufficient to support a conviction, without specifying the defi-· ciency, does not comply with the rule [4–324] and thus does not preserve the issue for sufficiency of appellate review.

Appellant, when afforded an opportunity to present argument on his motions for judgment of acquittal at the close of the State's case-in-chief and again at the close of all of the evidence, chose to "submit" without articulating the particularized reasons which would justify acquittal. Accordingly, he has waived any complaint with respect to the sufficiency of the evidence.

Had appellant properly preserved the sufficiency argument for our review, we would nonetheless be constrained to find that the evidence was indeed sufficient to sustain the conviction. His argument regarding the sufficiency of the evidence is, in fact, an attack on the weight of the evidence and the credibility of the witnesses. He insists that no drugs or paraphernalia were found on him; that the distance from which the police had to observe the transaction was too far to make their observations reliable; that the police documentation indicated that $39 had been recovered from Shuron rather than the appellant; and that there was produced no "photographic, videotape, or audiotape evidence of the alleged distribution of cocaine."

Finally, he suggests that the lack of fingerprint evidence or other physical proof to link appellant to the baggies of cocaine warrants a finding of insufficiency of the evidence. Where any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt,

the evidence is sufficient to sustain the conviction. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Tichnell v. State,* 287 Md. 695, 717, 415 A.2d 830 (1980).

Appellant admitted speaking with Shuron at the time the alleged transaction was to have taken place. He was observed approaching Shuron, receiving currency from him, and delivering to Shuron several small white objects ostensibly after obtaining same from 406 Woreley Street. It is beyond cavil that these observations made by one offered as an expert in the field of drug enforcement give rise to circumstances from which one could conclude that the small white objects handed to Shuron by the appellant were the same ziploc bags containing what proved to be cocaine which were retrieved from the person of Thomas Shuron. The evidence was clearly sufficient to sustain appellant's conviction.

## II.

### THE LOWER COURT DID NOT ERR BY OVERRULING APPELLANT'S OBJECTION TO THE CLOSING ARGUMENT BY THE PROSECUTOR

Appellant contends that, by emphasizing the defendant's failure to call his own father and Thomas Shuron, the State was permitted improperly to shift the burden of production to the defense and thus relieve the State of the burden of production and persuasion as to every critical element of the crime charged.[1] The principal authority relied upon by

---

1. Appellant's counsel objected when the prosecutor argued to the jury, "Why wasn't the father here to say.... If that were the truth, you would have anybody in here including Thomas Shuron, who he says—." At a bench conference, however, appellant's counsel complained: "Just as a matter of record, the State's Attorney was arguing about believing Mr. Shuron.... I don't think the State should be talking about the credible nature of Mr. Shuron's testimony." The Court's ruling was on the issue of arguing the credibility of an absent witness. The shifting of the State's burden by reason of the prosecutor's comments thus was not squarely presented to the trial judge. We

appellant is a footnote contained in *Eley v. State*, 288 Md. 548, 555, 419 A.2d 384 (1980):

> Our decision today must not be interpreted as an invitation to the prosecution in a criminal case to comment upon the defendant's failure to produce evidence to refute the State's evidence. Such comment might well amount to an impermissible reference to the defendant's failure to take the stand. Moreover, even if such a comment were not held tantamount to one that the defendant failed to take the stand it might in some cases be held to constitute an improper shifting of the burden of proof to the defendant.

The State acknowledges—as it must—that the burden remains on the State throughout to prove the defendant guilty beyond a reasonable doubt and that a criminal defendant is under no obligation to prove his innocence. The State correctly asserts, however, that there is a distinction between the allocation of the burdens of persuasion and production as opposed to inferences to be drawn from the failure of a party to produce relevant evidence. The State takes the position that the arguments by the prosecutor "simply represented a specific application of the well-established 'missing witness' inference."

At one point in the prosecutor's closing argument to the jury, he said:

> [Assistant State's Attorney Gregory Gaskins]: And I say to you do you think Officer Calvin Sewell was lying when he took the stand? Do you think Officer Darryl DeSousa was lying when he took the stand or do you think that Officer Fitzgerald was lying when he took the stand, and we never did hear from the defendant's parents. They were never here to say, yes, he was going to work with me.

---

shall not treat the issue as having been waived since, in the first instance, the objection of appellant's counsel was overruled without any basis requested after comments about the failure of the appellant to produce his father and Thomas Shuron as witnesses.

And I ask you, let that question rule in your mind. Why wasn't the father here to say, yes, he was going to work with me because it is a concocted story and it is concocted on that stand. If that were the truth, you would have anybody in here including Thomas Shuron who he says—

[Defense Counsel Marcia Stephenson]: Objection.

MR. GASKINS: They would be here.

MS. STEPHENSON: Objection.

THE COURT: Overruled.

MR. GASKINS: So it is only one truth here and don't let him destroy that truth because the truth cannot be destroyed. Officer DeSousa was telling the truth when he observed this man distributing the drugs. Thank you.

The defense counsel countered in her closing argument:

[Ms. Stephenson]: Now, what is interesting about this case is that you have the State's Attorney talking about Mr. Thomas Shuron and Mr. Thomas Shuron. The State's Attorney's Office in this case they locked up Mr. Shuron and it is unfair because we have no burden of proof of bringing anybody in. If they wanted to bring Mr. Thomas Shuron in, they could have brought Mr. Thomas Shuron into this courtroom. They could have. They didn't.

Finally, the rebuttal closing argument of the prosecutor included the following:

[Mr. Gaskins]: And while it is true the State has the burden of proof, and I don't have any problem with that, but the State and defense are allowed the privilege of summoning witnesses, just as the State can summons the police officers the defense—

MS. STEPHENSON: Objection.

THE COURT: I am going to overrule the objection.

MR. GASKINS: Just as the State can summons the witnesses, the defense can summons witnesses and it can summons anybody, anybody in 406 [*i.e.,* the residence that Garrison was seen to enter before selling the drugs] who could say I have never seen this man before in my

life, but they didn't do that. The defense did not bring anybody in and they could have summonsed Thomas Shuron. The State does not frequently summons in defendants.

MS. STEPHENSON: Objection.

THE COURT: Overruled.

MR. GASKINS: Thomas Shuron's credibility is nothing, just like his credibility is nothing, and I would not ask you to believe the testimony of Thomas Shuron anymore than I would ask you to believe the testimony of this armed robber here.

MS. STEPHENSON: Objection. May we approach now if Your Honor please?

THE COURT: You may.

(Whereupon, counsel and the Defendant approached the bench and the following conference ensued:)

THE COURT: Yes.

MS. STEPHENSON: Just as a matter of record, the State's Attorney was arguing about believing Mr. Shuron. I attempted yesterday to bring in Mr. Shuron. Let me say for the record Mr. Shuron's case was steted [sic] so he could testify for the State. Of course, he was not brought in, but I don't think the State should be talking about the credible nature of Mr. Shuron's testimony.

MR. GASKINS: First of all, her objection as to what I said about Mr. Shuron is not true. She did not object—

THE COURT: You are just arguing about the defendant's credibility?

MR. GASKINS: That is correct.

THE COURT: So I don't know where your objection is coming from. His statement in closing argument went to the defendant's credibility, not Mr. Shuron's. So I don't understand the objection as to Mr. Shuron. The only statement he made was that he could have brought him in which is true. He could have or you could have, but on credibility he is talking about the defendant, not Mr. Shuron.

MS. STEPHENSON: I believe I heard him say Mr. Shuron. He wouldn't believe the credibility of Mr. Shuron.

THE COURT: I heard he wouldn't believe the testimony of this defendant. What did you say or I will ask Ms. Walker to read it back.

MR. GASKINS: I believe what I said was I wouldn't ask you to believe.

THE COURT: You obviously can't talk about the credibility of a witness who is not here. I didn't hear such a thing if you did.

MR. GASKINS: I talked about him.

THE COURT: The only thing he talked about was the credibility of this defendant which he is free to argue.

MS. STEPHENSON: I heard otherwise, judge. I heard him mention—

THE COURT: You want to check Ms. Walker.

The inference sought to be raised by the State in its closing argument was that the testimony of Thomas Shuron, the residents of 406 Woreley Street, and appellant's father would have been unfavorable by reason of his failure not to call those witnesses. The missing witness rule as stated in 1 Wharton, *Criminal Evidence* 5 148 (13th ed. C. Torcia 1972), is

[t]hus, the missing witness rule applies where (1) there is a witness, (2) who is peculiarly available to one side and not the other, (3) whose testimony is important and non-cumulative and will elucidate the transaction, and (4) who is not called to testify. The inference to be drawn from the failure to call a witness will arise only if the relationship between the defendant and the witness is one of interest or affection. 1 Wharton's *Criminal Evidence, supra,* 5 149.

■ The inference will not arise if the relationship is that of an accomplice/defendant, *Christensen v. State,* 274 Md. 133, 333 A.2d 45 (1975), although the defendant's conviction will not be set aside if the prosecution argues the rule and

no request for a reverse missing witness instruction is made. *Pierce v. State,* 34 Md.App. 654, 658, 369 A.2d 140 (1977).

*Pierce* and *Christensen* address the issue of the trial judge's failure to give an instruction that the defendant has no duty to produce any evidence where comments are made by the prosecutor regarding the defendant's failure to produce evidence. In *Woodland v. State,* 62 Md.App. 503, 490 A.2d 286 (1985), we considered the propriety of a prosecutor's comments, over objection, arguing the missing witness rule. We said, at 62 Md.App. 511–12, 490 A.2d 286:

Abdula presents a different analysis. His testimony could only have corroborated appellant's assertion that he had spoken to Abdula on the evening of the murders, learned he would be home and, though no time was given, indicated he would be by that night. Abdula was not an accomplice and, as appellant's friend, he would appear to have the requisite relationship. The relevant inquiry then is his materiality or importance of his testimony. We are of the opinion that Abdula, in the context of this case, was not a material witness whose testimony would elucidate the transaction.

We conclude that the missing witness rule did not apply. We agree with the trial court that the prosecution was not entitled to a missing witness instruction. Nevertheless, the prosecutor was allowed to argue the rule. We turn to the issue whether that argument was proper.

A similar situation to that in the instant case was presented in *Pierce v. State, supra.* There, the prosecutor was allowed, over objection, to argue the missing witness rule even though the missing witness was an accomplice. No reverse missing witness instruction was requested as it was in *Christensen v. State, supra.* Finding no error, we said: (34 Md.App. at 662, 369 A.2d 140)

... there is a clear distinction between that which a trial judge *must* instruct a jury when requested and

that which counsel *may* argue to it [emphasis in original].

The appellant's father and Thomas Shuron occupy positions requiring a different analysis with respect to whether the missing witness rule applies to the instant case. Because Thomas Shuron was a participant, the State normally would not be entitled to invoke the missing witness rule under *Christensen v. State, supra.* The rationale, under *Christensen,* is that, where an accomplice or co-defendant is called to testify, his counsel might well advise him to invoke his constitutional right against self-incrimination and the defendant's case might be damaged because "the defendant would be faced with a Hobson's choice incompatible with our concept that a defendant is innocent until proven guilty beyond all reasonable doubt and that the burden of proof never shifts from the State." *Id.* 274 Md. at 140, 333 A.2d 45.

In discussing *Christensen,* the Court of Appeals said, in *Robinson v. State,* 315 Md. 309, 320, 554 A.2d 395 (1989), that

[t]his case differs significantly from *Christensen* because, according to the defendant's testimony, there was no reasonable possibility that the defendant's case would be harmed even if Johnson were called and he claimed the privilege in the presence of the jury. The defendant's testimony demonstrated that Johnson was probably guilty of a crime. The defendant said he had seen Johnson driving the car on the day preceding the incident. He also said that at the time he borrowed the car, he believed Johnson when Johnson said the car belonged to his cousin. However, the defendant said that after the police showed him that the ignition lock had been "popped," and after Johnson walked away from him when he attempted to have Johnson explain the circumstances to the police, the defendant realized that Johnson must have known the car was stolen. That being the case, if the defendant had called Johnson as a witness and Johnson had refused to testify, the refusal would have been

entirely consistent with the defendant's version of the facts, and would not have been damaging to the defendant's case. According to the only evidence in the case relating to Johnson, he was neither an accomplice nor a codefendant. He was the probable thief or receiver of the stolen car, who had misled the defendant. The reasonable fear of calling a witness that was present in *Christensen* was not present here.

In the case *sub judice* if Thomas Shuron had been called as a witness and invoked his constitutional right against self-incrimination, appellant's case would not have been harmed because the jury could just as easily conclude that Shuron did not want to implicate himself in the crime of cocaine possession, as it also could be that Shuron did not wish to incriminate himself as a purchaser of drugs. Shuron's *possession* of cocaine was compatible with appellant's testimony that he (appellant) refused Shuron's offer to sell him the drugs. It should be noted that appellant was charged under Criminal Information No. 590158014 *separately* from Shuron and, according to the proffer of defense counsel, Shuron's case was stetted. Consequently, although involved in the same criminal episode, he was neither an accomplice or a codefendant. According to defense counsel, she attempted "to bring in Mr. Shuron" on the preceding day, his case having been stetted. Shuron was thus available to the defense, although ostensibly available to the State as well; his testimony was non-cumulative and would elucidate the transaction and no explanation was offered as to why he was not called to testify.[2] 1 Wharton, *Criminal Evidence* 5 148.

The case for invocation of the missing witness rule as to appellant's father is equally compelling. Considering the factors set forth, appellant's father was peculiarly available to appellant and less available to the State; his testimony would have buttressed the appellant's credibility; his father

---

2. The implication from the proffer of appellant's counsel at the bench was that her efforts to secure him as a witness were unsuccessful.

was not called to testify in his behalf; and the relationship between the appellant and his father would naturally be one of interest or affection. While it may be arguable that appellant's testimony that he was en route to work may not have been mutually exclusive with the events as recited by the police officers, the testimony of appellant's father would have added some credence to appellant's story. Thus it may be assumed, at the least, that appellant's father could not substantiate that the appellant was scheduled to work that day; and, at worst, it may be assumed that the testimony of appellant's father would have been in contravention of the testimony appellant would have offered.

As to the residents of 406 Woreley Street, there is nothing in the record to indicate the availability of the occupants of the house as to either side and the inference, in such case, would have been inappropriate.

Notwithstanding that the record fails to reflect the availability of the residents of 406 Woreley Street, as we have observed, *supra*, a distinction must be made between the clear mandate that a trial judge instruct a jury when requested to do so on a point of law generated by the evidence as opposed to the latitude to be afforded counsel in argument to the jury. The Court of Appeals in *Robinson v. State, supra,* 315 Md. at 318, 554 A.2d 395, discussed the use of inferences by the finder of fact:

> There is nothing mysterious about the use of inferences in the fact-finding process. Jurors routinely apply their common sense, powers of logic, and accumulated experiences in life to arrive at conclusions from demonstrated sets of facts. Even had there been no instruction concerning the availability of this inference, we think it likely that among the first questions posed in the deliberation of this case would have been, "Why didn't the defendant produce Alvin Johnson?" Only if, as a matter of law, the unfavorable inference could not have been drawn by the jurors would the trial judge have been authorized to prohibit the prosecutor from posing that same question in argument. And, only if the circumstances were such that

the trial judge should have prohibited the argument would we be likely to reverse because the instruction was given. If the argument fairly may be made, then it stands to reason that a sufficient foundation of facts exists upon which the inference may be drawn. Where the inference may be drawn, it will ordinarily be within the discretion of the trial judge to grant or refuse a missing witness instruction. [Footnotes omitted.]

As noted herein, arguments of counsel regarding the missing witness rule are viewed differently from the trial judge's instructions because of the possibility that one legitimate inference may be emphasized over other legitimate inferences which jurors are told are solely within their judgment. *Yuen v. State*, 43 Md.App. 109, 403 A.2d 819 (1979); *Bailey v. State*, 63 Md.App. 594, 493 A.2d 396 (1985).

■ Assuming, *arguendo*, that the prosecutor's closing remarks were improper, reversal would not be warranted in the case unless the remarks were prejudicial and were likely to have swayed the jury's verdict substantially. *Wilhelm v. State*, 272 Md. 404, 415, 326 A.2d 707 (1974). In assessing the likelihood of prejudice, we may look at the relative strength of the State's case, the extent to which the remarks were likely to have inflamed the jury, and whether the prosecutor acted in bad faith. *Id.* at 416–32, 326 A.2d 707. The prosecutor's closing arguments with respect to the failure to produce Thomas Shuron and appellant's father as witnesses were an attempt on the part of the State to point out the incredulity of the appellant's testimony. The remarks concerning the occupants of 406 Woreley Street, although improper, were not so prejudicial as to sway the jury's verdict substantially. While one may not comment on a criminal defendant's failure to testify, once he or she "voluntarily takes the witness stand in his own behalf, [the defendant] thereby subjects himself to the same

rules of cross-examination that govern other witnesses."
*Davis v. State*, 237 Md. 97, 106, 205 A.2d 254 (1964).

Although the prosecutor's comments on the failure of the appellant to call the occupants of 406 Woreley Street were improper, we said, in *Woodland v. State*, 62 Md.App. at 516–517, 490 A.2d 286:

> Such actions may require the giving of curative instructions. *Conway v. State*, 7 Md.App. 400, 256 A.2d 178 (1969). Additional factors to be considered are the closeness of the case, and the centrality of the issue affected by the error. *Wilhelm v. State, supra.*

The fact that statements may be improper does not necessarily require reversal. *Wilhelm v. State, supra, Curry v. State*, 54 Md.App. 250, 458 A.2d 474 (1983). In assessing whether a defendant has been prejudiced by such improper remarks, the Court of Appeals has observed:

> When in the first instance the remarks of the State's Attorney do appear to have been prejudiced, a significant factor in determining whether the jury were actively misled or were likely to have been misled or influenced to the prejudice of the accused is whether or not the trial court took any appropriate action, as the exigencies of the situation may have appeared to require, to overcome the likelihood of prejudice such as informing the jury that the remark was improper, striking the remark and admonishing the jury to disregard it.

*Wilhelm v. State*, 272 Md. at 423–424, 326 A.2d 707.
The lower court admonished the jury:

> [C]losing argument, I will remind you is just argument. It is not evidence in the case. There were comments made by the State's Attorney about the credibility of an absent witness Thomas Shuron.
>
> . . . .
>
> You should disregard those comments.

Given the facts that appellant's counsel did not move for a mistrial and no request for a reverse missing witness instruction was made, *Pierce v. State, supra,* and in view of

**490**

the Court's curative instruction, we conclude any error committed was harmless beyond a reasonable doubt.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.