693 A.2d 360

Anthony McDUFFIE

v.

STATE of Maryland.

No. 1255 Sept.Term., 1996.

Court of Special Appeals of Maryland.

May 5, 1997.

Hyuk Michael Kim (Jennifer P. Lyman, Assigned Public Defender, on the brief), Washington, DC, for Appellant.

Devy Patterson Russell, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore and Sandra A. O'Connor, State's Attorney for Baltimore County, Towson, on the brief), for Appellee.

Argued before WENNER, CATHELL and SALMON, JJ.

WENNER, Judge.

Appellant, Anthony McDuffie, was convicted by a Baltimore County jury of theft, robbery, and robbery with a dangerous and deadly weapon. After he was sentenced to a term of twenty years, with ten years suspended and credit for time served, appellant noted this appeal, presenting us with the following questions:

I. Whether the trial court committed reversible error when it refused a defense request for a missing witness instruction after the State did not call a peculiarly available material witness?

II. Whether the trial court committed reversible error when it did not exclude identifications tainted by an unnecessarily suggestive showup, when they were not made independently and were not the product of reliable observations?

Finding no error, we shall affirm the judgments of the circuit court.

## Facts

At approximately 9:00 p.m. on 2 January 1996, two men robbed the Papa John's pizza carry out in Woodlawn. Erick Douglas was working alone when two men wearing "hoodies" pulled tightly around their faces entered Papa John's and announced, "this is a stick up". The first robber was armed with a pellet gun, and yelled for the second robber to shoot Douglas because he was taking too much time to open the cash register. When Douglas eventually opened the cash register and handed the cash drawer to the first robber, both robbers fled the premises.

At the suppression hearing, Douglas testified that he had had a "very long look" at the first robber and described him as a black male with brown skin, eighteen or nineteen years old, who stood about five feet eleven inches tall. Douglas also described the second robber, who was later identified as Antoine M. Henderson.

An officer pursued two individuals seen running from Papa John's Pizza into a wooded area. In a short time, Henderson was apprehended and identified by Douglas as the second robber. In addition to Henderson, two sweatshirts, a pellet gun, a cash drawer, and a hat were found in the woods.

Henderson initially claimed to be innocent, blaming the robbery on McDuffie. Henderson said he owed McDuffie some money, and that he and McDuffie had gone to Papa John's for Henderson to get a pizza. According to Henderson, without notice, McDuffie got out of the car, ran into and robbed Papa John's. Henderson said he had run from Papa John's because he was scared. Moreover, Henderson assisted the police in finding McDuffie.

A short time after the robbery, the police transported Douglas and Joe Hayes, another Papa John's employee, to where appellant had been detained. Douglas and Hayes remained in the rear seat of the police cruiser. Douglas recalls that an officer approached, leaned in the window and said, "[W]e want you to take a look at this gentleman and make sure that you are one-hundred percent sure who it was if you could identify him." At that point, Douglas identified appellant. Although two more individuals were shown to Douglas, Douglas maintained that appellant was the first robber.[1] During the show-up identification, none of the men wore hoodies. Joe Hayes had entered Papa John's parking lot at the conclusion of the robbery, and accompanied Douglas in the police cruiser. Consequently, Hayes confirmed Douglas' identification of appellant and other details of the show-up identification.

After being identified by Douglas, appellant was placed under arrest. Although both Henderson and appellant were

---

1. Officer A. Malinowski testified that when he approached the cruiser, the driver said Douglas had "identified him. I looked in the car ... and asked, is this the guy, and from the back seat came, yes, that's the guy. I said, which one? The one to the left. The one that was standing to the left was Mr. McDuffie. At that point I placed Mr. McDuffie under arrest."

charged with the robbery, Henderson pled guilty in exchange for leniency for testifying against appellant. Upon taking the stand at appellant's trial, Henderson admitted initially lying to the police so they would arrest appellant rather than himself.

Henderson then testified that, after borrowing a pellet gun from a friend, he and appellant had gotten a ride to Papa John's because Henderson needed money to pay a debt. In fact, Henderson's testimony wavered between owing appellant nothing, and owing him more than twenty dollars. Henderson then said he also owed a friend named "Deion" additional money. Counsel for appellant observed that if Henderson owed appellant money and his testimony resulted in appellant being jailed, appellant would be unable to collect money owed him.

Henderson said that Lavarro Younger had driven them to Papa John's. According to Henderson, Younger earned money as a "hack," a taxi driver. When appellant called Younger as a witness, Younger invoked his Fifth Amendment privilege against self-incrimination. Appellant proffered that Younger would testify that he was not driving appellant to Papa John's, but to meet Henderson. When they were returning to appellant's apartment, the police arrived with Douglas who identified appellant as one of the robbers.

After Younger invoked the Fifth Amendment, the defense presented no evidence. Upon being convicted, appellant noted this appeal.

## I.

 Appellant first contends the trial court erred in declining to give a missing witness instruction because Younger was not called as a State's witness. Although appellant believed Younger would provide him with an alibi, the State considered Younger an accomplice. As we have said, when Younger was called as a defense witness he invoked his Fifth Amendment right.

■ The missing witness rule is "that if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Woodland v. State,* 62 Md.App. 503, 510, 490 A.2d 286 (1985) (quoting *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893)). The rule "applies where (1) there is a witness, (2) who is peculiarly available to one side and not the other, (3) whose testimony is important and non-cumulative and will elucidate the transaction, and (4) who is not called to testify." *Woodland,* 62 Md.App. at 510, 490 A.2d 286 ("The inference will not arise if the relationship is that of accomplice/defendant. . . .").

Appellant claims Younger was "peculiarly available" to the State because he would have readily testified for the State had he been offered immunity. As Younger's testimony would place him with appellant during the robbery upon being called by the defense, he invoked the Fifth Amendment.

Ordinarily, a witness is "peculiarly available" to one party because of a relationship or affection between that party and the witness. *See Robinson v. State,* 315 Md. 309, 314–15, 554 A.2d 395 (1989); *Davis v. State,* 333 Md. 27, 50, 633 A.2d 867 (1993); *Woodland,* 62 Md.App. at 510, 490 A.2d 286. The State had no relationship whatever with Younger. Although the State could have offered Younger immunity in exchange for his testimony, the State obviously concluded that it had no need for Younger's testimony. In any event, the State is under no obligation to offer immunity to a defense witness. From the State's perspective, Younger was simply the driver whose testimony was unnecessary to convict appellant. In fact, Younger had initially been charged as an accomplice, but the charge was later *nol prossed.*

■ Of course, Younger became an unavailable witness upon invoking the Fifth Amendment. As was explained in *Robinson v. State,* "if a privilege is claimed the trial judge may use that information to rule out a missing witness instruction." 315 Md. at 316, 554 A.2d 395 (Defendant failed to produce an

important witness and the Court held the State was entitled to a missing witness instruction.).

In any event, even though the facts may support such an instruction, whether to give such an instruction is within the sound discretion of the trial judge. *Id.* at 319, 554 A.2d 395. We find no abuse of discretion. Hence, there was no error.

## II.

Appellant next contends the trial court erred in declining to suppress his pretrial and anticipated in-court identification. According to appellant, his identification by Douglas from the rear seat of a police cruiser was unduly suggestive because Douglas and Hayes viewed appellant together, each reinforcing the other's identification. In addition, appellant claims the in-court identification was suggestive because neither Douglas nor Hayes had an adequate opportunity to view the robbers.

In a pre-trial motion, defense counsel claimed that "any identification of the defendant was or will be tainted as a result of impermissibly suggestive identification procedures by police authorities." The trial court concluded that neither the show-up nor the in-court identification was suggestive, and denied the motion.

■ On appeal, "[w]e extend great deference to the fact finding of the suppression hearing judge with respect to determining the credibilities of contradicting witnesses and to weighing and determining first-level facts." *Perkins v. State,* 83 Md.App. 341, 346, 574 A.2d 356 (1990). After considering the testimony, the trial court determined the police had said nothing suggestive to Douglas.

■ "[D]ue process protects the accused against the introduction of evidence of, or tainted by, unreliable pretrial identifications obtained through unnecessarily suggestive procedures." *Moore v. Illinois,* 434 U.S. 220, 227, 98 S.Ct. 458, 464, 54 L.Ed.2d 424 (1977). In Maryland, a two-stage inquiry for challenging an out-of-court identification has been established. "The first question is whether the identification procedure was impermissibly suggestive," and 'suggestiveness' "exists where

'[i]n effect, the police repeatedly said to the witness, *'This* is the man.'" *Jones v. State,* 310 Md. 569, 577, 530 A.2d 743 (1987), *vacated and remanded on other grounds,* 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916, *on remand,* 314 Md. 111, 549 A.2d 17 (1988) (quoting *Foster v. California,* 394 U.S. 440, 443, 89 S.Ct. 1127, 1129, 22 L.Ed.2d 402 (1969)). The trial court considered Douglas' testimony as to what had been said to him by the police while driving to where appellant had been detained and what they had said upon arriving and pointing out appellant, and concluded that no pressure had been exerted and that nothing had been said suggesting their certainty that appellant had committed the robbery.

At the suppression hearing, Douglas testified that, upon arriving at the location where appellant was detained, an officer "came over to the [car] and he was like we want you to take a look at this gentleman and make sure that you are one-hundred percent sure who it was if you could identify him. Then they flashed the light on the gentleman and I identified him." According to Douglas, from where he was sitting he was unable to ascertain whether appellant was handcuffed. According to Hayes, upon reaching the location, a police officer leaned into the cruiser and said, "we have a few people over here, see if you recognize any of them." Accordingly, the trial court did not err in finding the identification not to be impermissibly suggestive.

█ If we were to conclude the identification was "tainted by suggestiveness," it would become necessary for us to assess "whether, under the totality of the circumstances, the identification was reliable." *Jones,* 310 Md. at 577, 530 A.2d 743. There are several factors which lead us to the conclusion that, under the totality of the circumstances, this identification was reliable: the relatively short time between the robbery and the identification (approximately an hour to an hour and a half); Douglas, Hayes, and the police all said Douglas was certain of his identification of appellant and had never wavered; Douglas' description of the first robber to enter Papa John's adequately described appellant; and Douglas' claim he had had a good look at that person during the robbery.

■ In appellant's view, his joint identification by Douglas and Hayes should be considered inherently suspect. We recognize that when a line-up or a show-up identification is viewed by two witnesses together, there is an increased potential for suggestiveness, because one witness could bolster the confidence of the other that they have chosen the right person. The confidence of an unsure witness may be persuaded by the confidence of the other witness. However that may be, there was one primary witness to this robbery, Douglas, who was alone during the robbery. Although accompanied by Hayes during the show-up identification, Douglas and Hayes testified that Douglas identified appellant without any comment from Hayes. Simply because they were together during the identification does not render it unfairly suggestive. There was no error.

■ Finally, appellant claims the trial court should have suppressed his in-court identification. For reasons already expressed, under the totality of circumstances, Douglas' identification of appellant was reliable, and we believe the trial court appropriately admitted the in-court identification.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**